**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DARWIN HART-JONES,** | **CIVIL ACTION** |
| Petitioner, | |
| *v.* | **NO. 21-5286-KSM** |
| **THE DISTRICT ATTORNEY OF THE COUNTY OF PHILADELPHIA, et al.,** | |
| Respondents. | |

<u>**MEMORANDUM**</u>

**MARSTON, J.**                                    **February 21, 2025**

Pro se petitioner Darwin Hart-Jones, who is currently incarcerated at State Correctional Institution – Benner Township, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (*See* Doc. No. 1.) He raises six claims for relief and seeks an evidentiary hearing. (*See id.*) The Court referred Hart-Jones' petition to United States Magistrate Judge Elizabeth T. Hey for a Report and Recommendation ("R&R"). (Doc. No. 6.) On April 10, 2024, Judge Hey entered an R&R, rejecting all of Hart-Jones' claims for relief, and recommending that the Court dismiss with prejudice Hart-Jones' petition and deny his request for an evidentiary hearing. (*See* Doc. No. 20.) Hart-Jones objects to the R&R as to two of his claims for relief. (*See* Doc. No. 27.) For the following reasons, the Court overrules Hart-Jones' objections and adopts the R&R in its entirety.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.     Underlying Conduct

The Superior Court of Pennsylvania detailed the facts underlying this case as follows:

On June 30, 2011, Khalif Gonzalez was walking westbound on

Horrocks Street with his friend Tyree Branch. Gonzalez testified that he saw Hart-Jones standing at the corner of Horricks and Unruh Streets, dressed in black with a hoodie covering the top of his forehead and ears. As the pair passed Hart-Jones, Branch said to Hart-Jones, "what are you looking at pussy?" A minute or two later, Gonzalez heard three gunshots and he and Branch ran towards their respective homes. Gonzalez, who received a gunshot wound to his right arm, looked back at Hart-Jones and saw him tuck a black gun with a clip into the front of his waistband. Branch, who was shot in the back, ultimately died from his wounds.

*Commonwealth v. Hart-Jones*, No. 1291 EDA 2013, 2015 WL 7571812, at *1 (Pa. Super. Ct. Feb. 20, 2015).

## B.    Trial Proceedings

Because the R&R provides a comprehensive summary of the evidence and arguments presented at Hart-Jones' jury trial before the Honorable Rose Marie DeFino-Nastasi in the Philadelphia County Court of Common Pleas, the Court recites only the evidence, arguments, and jury instructions from Hart-Jones' trial that are relevant to his habeas petition.

### 1.    <u>Defense Witnesses</u>

At trial, the defense called Jose DeLeon, who was on the front steps of a nearby house around 10:00 p.m. on the night of the shooting.  (Doc. No. 21-87, *Commonwealth v. Hart-Jones*, CP-51-CR-0013806-2011, Trial Tr. (Phila. Cnty. Ct. Comm. Pl. Mar. 27, 2013), at 62 ("Mar. 27, 2013 Trial Tr.").)[1]  Mr. DeLeon testified that he heard what sounded like gunshots, looked up, and saw a man, whom he initially thought looked like Hart-Jones, wearing a hoodie[2] run down the street and jump into the passenger's side of a waiting car, which took off once the man was

---

[1] The trial transcripts were part of the state court record received from the Philadelphia Court of Common Pleas, albeit after the R&R was entered, as well as attached to the Commonwealth's response. (*See* Doc. Nos. 21-85–21-88; Doc. Nos. 13-3–13-5.)

[2] This clothing description corresponds with the testimony of Khalif Gonzalez, one of the victims, who testified that he saw Hart-Jones wearing a hoodie when he encountered Hart-Jones on the night of the shooting.  (*Id.* at 7.)

inside. (*Id.* at 62–63.) Shortly thereafter ("maybe after thirty seconds"), he saw Hart-Jones, dressed in a white shirt and blue pants, come around from a hedge and walk down the street. (*Id.* at 63–65.) Mr. DeLeon knew Hart-Jones but did not get along with him. (*Id.* at 64.)

The defense also called Ajare Mathis, Hart-Jones' girlfriend of four years with whom he has two children. (*Id.* at 101.) Ms. Mathis testified that although Hart-Jones lived at his mother's house, which was close to the site of the shooting, he stayed with Ms. Mathis at her grandmother's house every night, which she estimated to be fifty blocks away from Hart-Jones' mother's house, including on the night of the shooting. (*Id.* at 100–01, 103, 107–08.) On the morning of the shooting, Ms. Mathis saw Hart-Jones leave wearing a white shirt and jeans and return that night to her grandmother's house between 10:10 and 10:15 p.m. wearing the same clothes, and he did not go back out. (*Id.* at 101–05.) Ms. Mathis admitted that she did not report to the police that Hart-Jones was with her at the time of the shooting. (*Id.* at 117–19.) On rebuttal, the prosecutor introduced a stipulation that the defense did not provide alibi notice until the date of jury selection. (*Id.* at 164–65.)

The prosecutor's cross-examination of Ms. Mathis included the following exchange:

> Q: You heard [Hart-Jones'] mom talk that her son was involved in this?
>
> A: No. I heard them talking about Fonz [Alfonso Glenn] getting taken down for an interview and that they was putting [Hart-Jones'] name in it.
>
> Q: So did you hear that Fonz told detectives that [Hart-Jones] admitted to doing it?
>
> THE COURT: All right –
>
> MR. HANNAH: Objection.
>
> THE COURT: That is totally objectionable.

MR. HANNAH:  Move to strike.

THE COURT:  Move to strike and don't do that again.

(*Id.* at 111–12.[3])  At the end of Ms. Mathis' testimony, the trial court gave the following

instruction to the jury:

> Ladies and gentlemen, just one thing, remember when I told you, when I spoke to you in the beginning of the week that questions are not evidence and that opening arguments and closing arguments are not evidence.
>
> Now you heard some information in this courtroom and I said sustained and ordered that it be stricken but I need to be really clear with you.
>
> This person, Alfonso Glenn, has not testified in this case. Anything that anyone says that he said, you cannot consider because he is not here to be cross-examined. His testimony can't be tested. That is why you hear me saying sustained. Don't do that.
>
> Now I think you heard possibly during opening arguments and just now in questioning by the District Attorney at least, that words from – they call him Fonz – Alfonzo Glenn's mouth. You are to disregard all of that.

(*Id.* at 138–39.)  The trial court also admonished the prosecutor outside of the presence of the

jury.  (*Id.* at 140.)

During his closing argument, defense counsel focused on Mr. DeLeon's testimony.  (*Id.*

at 180–83.)  Counsel argued that Mr. DeLeon was a disinterested witness who testified that he

saw Hart-Jones coming around from the bushes nearby at nearly the same time he saw a hooded

man running down the street and into a waiting vehicle.  (*Id.* at 182.)  Counsel emphasized that

Mr. DeLeon's description of Hart-Jones' clothing matched the descriptions of the clothing that

both Ms. Mathis and Hart-Jones' sister testified that he was wearing earlier that day.  (*Id.* at 183.)

---

[3] As explained in the R&R, though the trial court did not explicitly sustain defense counsel's objection in the moment, the transcript and the court's subsequent curative instruction make clear that the trial court did sustain the objection.  (*See* Doc. No. 20 at 32 n.19.)

Defense counsel went on to describe Ms. Mathis' testimony as follows:

> Now, I didn't talk about the girlfriend and don't think there is much to say about her. She came in here and she testified to what she believed and that's what real jury duty is about, weighing the evidence and this is a good case, you will get to weigh it.
>
> We know, and we submit Mr. Hart-Jones was out there that night. Exactly what time he got to the girlfriend, didn't get to the girlfriend, that's a question but we know he was out there but at the same token, we know he didn't shoot anyone.

(*Id.* at 185.)  After closing arguments, when discussing jury instructions, defense counsel did not object when the trial court stated, "I will not give alibi charges because the Defense didn't request it.  So I will not give failure to give alibi notice either."  (*Id.* at 231.)

### 2.    Prosecutor's Closing Argument

During the prosecutor's closing argument, after summarizing the evidence that she argued established that Hart-Jones was guilty of the murder of Tyree Branch and attempted murder of Khalif Gonzalez, she stated, "When you put all of that evidence together, it all points at this Defendant.  The only question is what are you going to do about it.  Don't make me have to call Khalif [Gonzalez] and tell him I'm so sorry.  You did the right thing . . . but it is not enough."  (*Id.* at 224–25.)  Defense counsel objected to this remark, and the trial court sustained the objection.  (*Id.* at 225.)

### 3.    Jury Instructions

After instructing the jury on the presumption of innocence and the requirement of proving guilt and all elements of the charged offenses beyond a reasonable doubt, and explaining that the Commonwealth is not required to prove its case "beyond all doubt or to a mathematical certainty . . . [or] demonstrate the complete impossibility of innocence," the trial court provided the following definition of reasonable doubt to the jury:

> A reasonable doubt is a doubt that would cause a reasonably careful

and sensible person to pause, hesitate or refrain from acting upon a matter of the highest importance to that person's own affairs or to that person's own interests.

A reasonable doubt must fairly arise out of the evidence presented or out of the lack of evidence presented with respect to some element of each of the crimes charged. A reasonable doubt, ladies and gentlemen, must be a real doubt. It may not be an imagined one nor may it be a doubt manufactured by you in order to avoid carrying out an unpleasant duty.

To summarize: You may not find the Defendant guilty based upon a mere suspicion of guilt. The Commonwealth has the burden of proving the Defendant guilty beyond a reasonable doubt.

If the Commonwealth has met that burden, then the Defendant is no longer presumed to be innocent and you should find him guilty; on the other hand, if the Commonwealth has not met its burden, then you must find the Defendant not guilty.

What I tell people, ladies and gentlemen, is that if a reasonable, sensible person were making a really important life decision, not an everyday decision and not a decision that can be easily changed, what to eat, what to wear, even buying a car. Those things can be fixed. They can be changed.

It is a big decision like whether to pick up your whole family and move across the country, whether to have very serious surgery like life-threatening surgery, the kind of decision that a person is really going to deliberate upon before they make it. If that reasonable, sensible person gathers the information to make the decision, then deliberates upon it, considers the pros and the cons but then in the end after that process, pauses, hesitates, cannot go forward in acting, that is what we call reasonable doubt.

(Doc. No. 21-88, *Commonwealth v. Hart-Jones*, CP-51-CR-0013806-2011, Trial Tr. (Phila. Cnty. Ct. Comm. Pl. Mar. 28, 2013), at 8–11 ("Mar. 28, 2013 Trial Tr.").)

### 4. <u>Verdict and Sentence</u>

The jury found Hart-Jones guilty of first-degree murder, attempted murder, aggravated assault, and two firearms offenses. (*Id.* at 46-47.) Immediately following the verdict, Judge DeFino-Nastasi sentenced Hart-Jones to life imprisonment without parole for murder, a

consecutive prison term of 10 to 20 years for attempted murder, concurrent prison terms on the

firearms counts, and no further sentence for aggravated assault. (*Id.* at 54–55.)

### C.    Direct Appeal Proceedings

The R&R succinctly summarizes Hart-Jones' direct appeal of his conviction:

> On direct appeal, Hart-Jones argued that the verdict was against the weight of the evidence and that the prosecutor committed misconduct when questioning Hart-Jones' girlfriend and during closing argument. *Commonwealth v. Hart-Jones*, No. 1291 EDA 2013, 2014 WL 7793302, Brief for Appellant, at *3 (Pa. Super. Aug. 26, 2014). The Superior Court affirmed, and the Pennsylvania Supreme Court denied allowance of appeal. *Commonwealth v. Hart-Jones*, No. 1291 EDA 2013, 120 A.3d 387 (table), 2015 WL 7571812 (Pa. Super. Feb. 20, 2015) ("Pa. Super. – Direct Op."); *Commonwealth v. Hart-Jones*, 147 EAL 2015, 125 A.3d 776 (table) (Pa. Aug. 21, 2015). As to the claims of prosecutorial misconduct, the Superior Court found that the defense waived the arguments by not requesting a mistrial, and in the alternative that a new trial would not have been warranted in light of the trial court's sustaining of counsel's objections and the court's instructions to the jury. Pa. Super. – Dir. Op. at 4-7.

(Doc. No. 20 at 2.)

### D.    PCRA Proceedings

The Court also recites the R&R's succinct summary of Hart-Jones' collateral review of

his conviction pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"):

> On June 6, 2016, Hart-Jones filed a pro se petition pursuant to Pennsylvania's Post Conviction Relief Act, 42 Pa. C.S.A. § 9541-9546 ("PCRA"), and he later filed a pro se memorandum of law in support. *Commonwealth v. Hart-Jones*, CP-51-CR-0013806- 2011, Motion for Post Conviction Collateral Relief (Phila. C.C.P. June 6, 2016), Petitioner's Amended Memorandum of Law in Support of His Motion for Post Conviction Relief under Act, 42 Pa.C.S. Section 9541 seq. (Phila. C.C.P Sep. 12, 2016). Counsel was appointed who filed amendments to the petition. *Id.*, Criminal Docket (Phila. C.C.P. entries dated Aug. 18, 2017, May 18, 2018, Aug. 31, 2018) ("Docket Sheet"), after which counsel moved to withdraw and new counsel was appointed who also amended the petition. *Id.* (entries dated

Sept. 19 & 24, 2018, Dec. 31, 2018).[4] After providing notice, Judge DeFino-Nastasi dismissed the petition without a hearing. Docket Sheet (entries dated Aug. 21, 2019, Sep. 26 & 30, 2019).[5] On appeal, Hart-Jones argued ineffective assistance of counsel ("IAC") for failing to move for a mistrial when the prosecutor asked an improper question and when the prosecutor made improper argument, i.e., for waiving the issues that were found waived on direct appeal. *Commonwealth v. Hart-Jones*, No. 2954 EDA 2019, Brief for Appellant, 2020 WL 5914049, at *4 (Pa. Super. Mar. 22, 2020). The Pennsylvania Superior Court affirmed, reiterating its prior alternative rulings that Hart-Jones was not prejudiced by either instance of alleged misconduct. *Commonwealth v. Hart-Jones*, No. 2954 EDA 2019, 248 A.3d 460 (table), 2021 WL 37464, at **4 (Pa. Super. Jan 5, 2021) ("Pa. Super. – PCRA Op."). The Pennsylvania Supreme Court denied allowance of appeal. *Commonwealth v. Hart-Jones*, 50 EAL 2021, 259 A.3d (table) (Pa. July 21, 2021).

(Doc. No. 20 at 2–3.)

### E.    Habeas Proceedings

Hart-Jones filed this pro se habeas petition on November 13, 2021.[6]  He raised five

grounds for habeas relief in his petition, all premised on IAC:

1)  Trial counsel's failure to object to the jury instruction on reasonable doubt;

2)  Trial counsel's failure to "request favorable applicable [jury] instructions regarding the evidence and the supposed defense";

3)  Trial counsel's erroneous advice to Hart-Jones regarding his right to testify;

4)  Trial counsel's failure to request a mistrial after the prosecutor asked an improper question of a defense witness (Ms. Mathis); and

---

[4] The amended petitions are not contained in the state court record received from the Philadelphia Court of Common Pleas. I did not find it necessary to obtain them.

[5] The orders are also not part of the record provided to this court.

[6] Pennsylvania and federal courts employ the prisoner mailbox rule, pursuant to which a pro se petition is deemed filed when it is given to prison officials for mailing.  *See Perry v. Diguglielmo*, 169 F. App'x 134, 136 n.3 (3d Cir. 2006) (citing *Commonwealth v. Little*, 716 A.2d 1287, 1288–89 (Pa. Super. Ct. 1998)); *Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998); *Commonwealth v. Castro*, 766 A.2d 1283, 1287 (Pa. Super. Ct. 2001).  Judge Hey notes that the petition was filed "within the one-year limitations period without the benefit of the mailbox rule."  (Doc. No. 20 at 3 n.4.)

     5)  Trial counsel's failure to object to and request a mistrial after the prosecutor made an improper remark during closing argument.

(Doc. No. 1 at 21.)  Hart-Jones' petition also ends with a paragraph entitled "Cumulative Errors," in which he states that "[w]hen combining the errors in this case, [he] is entitled to relief under this doctrine."  (*Id.* at 39.)  Hart-Jones acknowledges that his first three claims were not raised at the state court level and are thus procedurally defaulted, but he alleges IAC of his PCRA counsel as to these claims in order to overcome the procedural default and obtain review pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012).  (*Id.* at 19–21.)

     The Commonwealth opposes the petition, arguing that Hart-Jones' first three claims for relief are procedurally defaulted and not otherwise entitled to review under *Martinez* and that the state courts reasonably resolved Hart-Jones' fourth and fifth claims for relief.  (*See* Doc. No. 13 at 7–18.)  Hart-Jones filed a reply to the Commonwealth's opposition, providing further argument on his first and third claims for relief and renewing his request for an evidentiary hearing.  (Doc. No. 16.)

     On April 10, 2024, Judge Hey entered an R&R, rejecting all of Hart-Jones' claims as meritless and/or procedurally defaulted, denying Hart-Jones' request for an evidentiary hearing, and recommending the dismissal of Hart-Jones' petition with prejudice.  (Doc. No. 20.)  On December 4, 2024, Hart-Jones filed objections to the R&R.  (Doc. No. 27.[7])

## II.    LEGAL STANDARDS

### A.    R&R Review

     "In the Eastern District of Pennsylvania, Local Rule 72.1.IV(b) governs a petitioner's objections to a magistrate judge's report and recommendation."  *Piasecki v. Ct. of Common*

---

[7] The Court granted two extensions of time for Hart-Jones to file his objections, per his requests and for good cause shown.  (Doc. Nos. 24, 26.)

*Pleas*, No. 14-cv-7004, 2021 WL 1105338, at *3 (E.D. Pa. Mar. 23, 2021).  Under Local Rule 72.1.IV(b), a petitioner must "specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections."  *Id.* (quoting *Savior v. Superintendent of Huntingdon SCI*, No. 11-cv-5639, 2012 WL 4206566, at *1 (E.D. Pa. Sept. 20, 2012)).

When a party objects to a magistrate judge's findings, the district court must make "a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 673 (1980).  "Ultimate adjudicatory power" resides with the district court "after receiving assistance from and the recommendation of the magistrate."  *Raddatz*, 447 U.S. at 692. And after reviewing the magistrate judge's conclusions, the district court may "accept, reject, or modify, in whole or in part, the findings or recommendations" and "receive further evidence, or recommit the matter to the magistrate with instructions."  28 U.S.C. § 636(b)(1); *Raddatz*, 447 U.S. at 673–74.

But "[o]bjections [that] merely rehash an argument presented to and considered by a magistrate judge are not entitled to *de novo* review."  *Gray v. Delbiaso*, No. 14-cv-4902, 2017 WL 2834361, at *4 (E.D. Pa. June 30, 2017); *see also Prout v. Giroux*, No. 14-cv-3816, 2016 WL 1720414, at *11 (E.D. Pa. Apr. 29, 2016) ("Where objections do not respond to the Magistrate's recommendation, but rather restate conclusory statements from the original petition, the objections should be overruled.").  Also, where a petitioner fails to "identify with specificity any legal or factual errors in the R&R," the R&R is reviewed for clear error.  *Lee v. Houtzdale SCI*, 798 F.3d 159, 162 (3d Cir. 2015); *see also Kennedy v. Borough of Minersville*, No. 19-cv-0124, 2019 WL 4316218, at *1 (M.D. Pa. Sept. 11, 2019) ("In particular, Plaintiff does not take

issue with the substance of any of the Magistrate Judge's conclusions and/or recommendations. As such, the Report and Recommendation is reviewed for clear error, and finding none, it will be adopted."); *Guzman v. Rozum*, No. 13-cv-7083, 2017 WL 1344391, at *9 (E.D. Pa. Apr. 12, 2017) (explaining that "federal district courts are not required to engage in *de novo* review of objections to a Magistrate's R&R that lack specificity").

### B.    Habeas Actions

#### 1.    <u>Exhaustion of State Court Remedies</u>

A petitioner for a writ of habeas corpus must exhaust his remedies at the state level before he can present his claims in federal court.  28 U.S.C. § 2254(b)(1)(A).  If "he has the right under the law of the State to raise, by any available procedure, the question presented," then the petitioner has not exhausted his state court remedies.  *Id.* § 2254(c).  The exhaustion requirement "ensures that the same method of legal analysis that is used by the federal court in resolving the petitioner's claim was also readily available to the state court when it adjudicated the claim." *Landano v. Rafferty*, 897 F.2d 661, 669 (3d Cir. 1990).  Federal courts must rigorously enforce this requirement out of respect for the principles of comity and federalism.  *Rose v. Lundy*, 455 U.S. 509, 510 (1982); *see also Engle v. Isaac*, 456 U.S. 107, 128 (1982) ("The States . . . hold the initial responsibility for vindicating constitutional rights. Federal intrusions into state criminal trials frustrate both the States' sovereign power and their good-faith attempts to honor constitutional law.").

The petitioner bears the burden of demonstrating each of his claims has been exhausted. *Rose*, 455 U.S. at 515.  Satisfying this burden involves establishing that the federal claims were "fairly presented" to the state courts.  *Picard v. Connor*, 404 U.S. 270, 275 (1971).  To establish fair presentation, "it is not enough that the petitioner present[ed] to the state court the facts upon which a federal claim is based."  *Brown v. Cuyler*, 669 F.2d 155, 158 (3d Cir. 1982) (*per*

*curiam*).  Rather, the petitioner must have "provide[d] the state courts with both the same legal

theory and the same factual predicate underlying the constitutional argument."  *Landano*, 897

F.2d at 669.  If the state courts have not been given "one full opportunity" to address the claim

being pursued in the federal habeas proceeding, then the claim was not fairly presented.  *Rose*,

455 U.S. at 515.  In such an instance, the claim is considered unexhausted and must be dismissed

so that the state court can consider it in the first instance.  *Id.*

### 2.    <u>Procedural Default</u>

Where a petitioner's claim is unexhausted, but state procedural rules would bar him from

obtaining relief in the state courts, the claim is considered procedurally defaulted.  *Keller v.*

*Larkins*, 251 F.3d 408, 413 (3d Cir. 2001).  Federal courts cannot consider procedurally

defaulted claims unless the petitioner can show "cause for the default and actual prejudice as a

result of the alleged violation of federal law, or demonstrate that failure to consider the claims

will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. 722, 750 (1991).

### a.    **Cause and Actual Prejudice**

Cause for procedural default exists when "some objective factor external to the defense

impeded counsel's efforts to comply with the State's procedural rule."  *Murray v. Carrier*, 477

U.S. 478, 488 (1986).  And actual prejudice exists where the cause for default "worked to [the

petitioner's] actual and substantial disadvantage, infecting his entire trial with error of

constitutional dimensions."  *United States v. Frady*, 456 U.S. 152, 170 (1982).

Ineffective assistance of trial or direct appeal counsel can be a cause for procedural

default.  *Richardson v. Superintendent Coal Twp. SCI*, 905 F.3d 750, 759 (3d Cir. 2018).

In *Strickland v. Washington*, the Supreme Court established a two-pronged test that federal

habeas petitioners must satisfy in ineffective assistance of counsel claims.  466 U.S. 668, 687–88

(1984).  First, the petitioner must demonstrate that trial counsel's performance was objectively

unreasonable. *Id.* To do so, the petitioner must show specific acts by his counsel that fell "outside the wide range of professionally competent assistance." *Id.* When evaluating counsel's conduct, a federal court must "indulge [in] a strong presumption" that counsel acted reasonably. *Id.* at 689. Counsel's actions must be considered under the totality of the circumstances, "viewed as of the time of [said] conduct," and deference must be given to strategic decisions made by counsel. *Id.* at 689–91.

Second, the petitioner must prove to a "reasonable probability" that said errors prejudiced the result in his case. *Id.* at 694. A reasonable probability is one that is "sufficient to undermine confidence in the outcome." *Id.* The petitioner must show how counsel's unprofessional errors "actually had an adverse effect on the defense." *Id.* at 693.

Unlike the right to effective assistance from trial and direct appeal counsel—which is grounded in the Sixth Amendment—there is no federal constitutional right to counsel in collateral proceedings. *Coleman*, 501 U.S. at 754. So, although ineffective assistance of trial and direct appeal counsel may excuse a procedural default if counsel's failures satisfy *Strickland*, ineffective assistance of collateral review counsel cannot, on its own, excuse a procedural default. *Id.* at 753–54. Nonetheless, in *Martinez v. Ryan*, the Supreme Court established an equitable exception whereby inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedurally defaulted claim of ineffective assistance of trial counsel. 566 U.S. 1, 9 (2012). Federal courts construe this exception narrowly, applying it only where the habeas petitioner was "impeded or obstructed in complying with the State's established procedures." *Id.* at 13.

Because Pennsylvania's procedural rules dictate that a habeas petitioner should wait until initial-review collateral proceedings to raise claims of ineffective assistance of trial counsel, a

habeas petitioner who was convicted under Pennsylvania law can rely on *Martinez* to excuse a procedurally defaulted *Strickland* claim.  *See Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002).  The Third Circuit views *Martinez* as a three-part test, requiring habeas petitioners to show that:  (1) his procedural default was caused by ineffective assistance of post-conviction counsel or the absence of counsel in the initial-review collateral proceeding, (2) this ineffectiveness of counsel was raised in the first collateral proceeding when the claim could have been heard, and (3) the underlying claim of trial counsel ineffectiveness has some merit.  *Cox v. Horn*, 757 F.3d 113, 119 (3d Cir. 2014) (citing *Martinez*, 566 U.S. at 13–14).  Should the petitioner fail to satisfy any of these three conditions, his claim will remain procedurally defaulted without excuse and the federal habeas court will be barred from granting it.  *Id.* at 119–21.

### b. Fundamental Miscarriage of Justice

In addition to cause and prejudice, a petitioner may overcome a procedural default by showing a fundamental miscarriage of justice would result if habeas review were denied.  A fundamental miscarriage of justice is proven when a petitioner shows that he is "innocent of the charge for which he was incarcerated."  *Kuhlmann v. Wilson*, 477 U.S. 436 (1986).  The Supreme Court has "consistently reaffirmed the existence and importance of [this] exception" for allowing review of a procedurally defaulted claim and thus the potential correction of a procedural injustice.  *Schlup v. Delo*, 513 U.S. 298, 321 (1995).  That said, the Court has limited application of this exception to extraordinary circumstances and has not extended it to cases where petitioner's "guilt is conceded or plain."  *Kuhlmann*, 477 U.S. at 452.

### 3.  <u>Denial on the Merits</u>

Generally, a petitioner must satisfy the exhaustion requirement or excuse any procedurally defaulted claim before a federal court will review the merits of their claim.

*Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  However, pursuant to 28 U.S.C. § 2254(b)(2), a federal court can bypass these procedural issues and deny a petitioner's application on the merits.  Section 2254(b)(2) codified the Supreme Court's decision in *Granberry v. Greer*, which held that federal district court judges can "summarily . . . dismiss a habeas petition if it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court."  481 U.S. 129, 135–36 (1987).  Where "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further," the claim has "some merit" and the federal court *must* consider the procedural bar issues.  *Workman v. Superintendent Albion SCI*, 15 F.3d 928, 938 (3d Cir. 2019) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)).  On the other hand, if "it is perfectly clear that the applicant does not raise even a colorable federal claim," then the federal court can deny the petitioner's application on the merits.  *Lambert v. Blackwell*, 134 F.3d 506, 515 (3d Cir. 1997) (quoting *Granberry*, 481 U.S. at 135).

### 4. Section 2254(d)

If a petitioner shows that his claim is exhausted and not procedurally defaulted, or that the procedural default is excused, the federal court may grant habeas relief only if the petitioner satisfies the standard outlined in § 2254(d)(1) or (2).  Under the first subsection, the petitioner must show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law."  28 U.S.C. § 2254(d)(1).  For a state court decision to be "contrary to" clearly established federal law, "the state court [must] arrive at a conclusion opposite to that reached by the Supreme Court on a question of law or . . . decide[ ] a case differently than the Supreme Court has on a set of materially indistinguishable facts."  *Hameen v. Delaware*, 212 F.3d 226, 235 (3d Cir. 2000) (cleaned up).  A state court decision

involves an "unreasonable application of" clearly established federal law when "[it] resulted in

an outcome that cannot reasonably be justified under existing Supreme Court precedent."

*Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 890 (3d Cir. 1999).  This occurs when the

state court "identifies the correct governing legal rule . . . but unreasonably applies it to the facts

of the particular . . . case" or when the state court "unreasonably extends a legal principle from

[Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to

extend that principle to a new context where it should apply."  *Williams v. Taylor*, 529 U.S. 362,

407 (2000).

Should the petitioner fail to satisfy § 2254(d)(1), federal habeas relief will be denied

unless he can show under § 2254(d)(2) that the state court decision was "based on an

unreasonable determination of the facts in light of the evidence presented in the State court

proceeding."  28 U.S.C. § 2254(d)(2).  There is a presumption of correctness for factual

determinations made by state court judges, and the petitioner bears the burden of rebutting this

presumption by clear and convincing evidence.  *Id.* § 2254(e)(1); *see also Lambert v. Blackwell*,

387 F.3d 210, 234 (3d Cir. 2004).  However, if "the state court has not reached the merits of a

claim thereafter presented to a federal habeas court, the deferential standards provided by

[§ 2254(d)] . . . do not apply."  *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).  In such

instance, the federal court will review questions of law and mixed questions of law and fact *de

novo.  Id.*; *see also McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999).

## III.    DISCUSSION

Hart-Jones objects to Judge Hey's findings and conclusions that his first two IAC claims

are meritless and should be denied with prejudice.  (Doc. No. 27.)  These claims allege that his

trial counsel was ineffective for (1) failing to object to the reasonable doubt instruction and (2)

failing to request "favorable applicable instructions."  (Doc. No. 1 at 21.)  The Court addresses

his objections to Judge Hey's findings and conclusions as to both claims below.[8]

### A.    Ground 1:  Ineffectiveness of Trial Counsel Based on Failure to Object to Reasonable Doubt Instruction

Hart-Jones argues that his trial counsel was ineffective for failing to object to the trial court's reasonable doubt jury instruction and that his PCRA counsel was ineffective for failing to raise this claim, which caused its procedural default.  (Doc. No. 1 at 22–25; Doc. No. 16 at 1–4.) Judge Hey recommends dismissal of this claim based on her determination that the underlying IAC claim lacks merit pursuant to 28 U.S.C. § 2254(b)(2).  (Doc. No. 20 at 14–21.)  Specifically, Judge Hey finds that the trial court's reasonable doubt instruction, "which used an analogy to illustrate the gravity of the determination that neither appealed to the jury's emotions nor altered the burden, did not risk misleading the jury as to how it should apply the reasonable doubt standard . . . .  [t]herefore, counsel would have no basis to object to the reasonable doubt instruction, and the claim fails on the performance prong of the *Strickland* analysis."  (*Id.* at 21.)

Hart-Jones' objection to Judge Hey's conclusions essentially restates the arguments he made on this claim in his habeas petition and in his reply to the Commonwealth's response.  (*See* Doc. No. 1 at 22–25; Doc. No. 16 at 1–4.)  He disagrees with Judge Hey's conclusion that Judge DeFino-Nastasi's instruction "did not confuse the appropriate definition of reasonable doubt as a hesitation to act with the improper analogy creating a need to act" (Doc. No. 20 at 19–20), contending that the "extremely personal analogy of 'life threatening' surgery" included in the instruction "would ***prompt a reasonable and cautious person to act rather than causing them***

---

[8] Because Hart-Jones objects only to the resolution of his first two claims in the R&R, the Court reviews the remainder of Judge Hey's findings and conclusions for clear error.  *See EEOC v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017) ("Even absent objections to the report and recommendation, a district court should afford some level of review to dispositive legal issues raised by the report." (internal quotations omitted)).  Finding no error in these analyses, the Court adopts Judge Hey's recommendations as to Hart-Jones' remaining claims for relief and his request for an evidentiary hearing.

*to 'pause or hesitate or refrain from acting'* as the Standard Jury Instruction defines reasonable

doubt." (Doc. No. 27 at 5–6.) He also disagrees with Judge Hey's conclusion that Judge

DeFino-Nastasi's instruction lacked the emotionally charged component of a reasonable doubt

instruction that has repeatedly been struck down as unconstitutional by courts in this district,

claiming that the analogy in Judge DeFino-Nastasi's instruction was "equally 'emotionally

charged' and indeed elicited the jury's sympathies without adding anything to their

understanding of the concept of reasonable doubt." (*Id.* at 9.)

The Court agrees with Judge Hey that Hart-Jones' underlying IAC claim lacks merit and

can be denied under 28 U.S.C. § 2254(b)(2). (*See* Doc. No. 20 at 15.) *See id.* ("An application

for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the

applicant to exhaust the remedies available in the courts of the State."). The cases on which

Hart-Jones relies concern versions of the same reasonable doubt instruction that courts in this

district have repeatedly determined to be unconstitutional:

> It's helpful to think about reasonable doubt in this manner. Let's say,
> and I know that each one of you does have someone that you love
> very much, a spouse, a significant other, a child, a grandchild. Each
> one of you has someone in your life who's absolutely precious to
> you. If you were told by your precious one's physician that they had
> a life-threatening condition and that the only known protocol or the
> best protocol for that condition was an experimental surgery, you're
> very likely going to ask for a second opinion. You may even ask for
> a third opinion. You're probably going to research the condition,
> research the protocol. What's the surgery about? How does it work?
> You're going to do everything you can to get as much information
> as you can. You're going to call everybody you know in medicine:
> What do you know? What have you heard? Tell me where to go. But
> at some point the question will be called. If you go forward, it's not
> because you have moved beyond all doubt. There are no guarantees.
> If you go forward, it is because you have moved beyond all
> reasonable doubt.

*Brooks v. Gilmore*, No. 15-cv-5659, 2017 WL 3475475, at *3 (E.D. Pa. Aug. 11, 2017); *see*

*Vando v. Clark*, 652 F. Supp. 3d 509, 514–16 (E.D. Pa. 2023); *Moore v. Rivello*, 20-cv-838,

2022 WL 1749250, at *6–7 (E.D. Pa. May 31, 2022); *see also Baxter v. Superintendent Coal Twp. SCI*, 998 F.3d 542, 546–47 (3d Cir. 2021) (assuming that failure to object to a similar reasonable doubt instruction fell below the standard for competent representation without deciding the constitutionality of the instruction). (*See* Doc. No. 27 at 8.)  As Judge Hey properly concludes, however, the reasonable doubt instruction at issue here lacks the objectionable features that made the instructions in *Vando*, *Brooks*, and *Moore* unconstitutional.

First, Judge DeFino-Nastasi's instruction did not phrase reasonable doubt as doubt that would cause a juror to act.  *See Moore*, 2022 WL 1749250, at *9–10 (finding that the reasonable doubt instruction is unconstitutional in part because it "situated reasonable doubt in terms of acting, as something a person considering an experimental medical procedure for a loved one would overcome 'if you choose to go forward' with the procedure"); *Brooks*, 2017 WL 3475475, at *4–5 (holding that the reasonable doubt instruction is unconstitutional in part because the trial judge "structured the hypothetical [used in the instruction] in terms of the jury proceeding to take action on behalf of their family member, twice using the phrase 'if you go forward….'"). Rather, her instruction appropriately described reasonable doubt as doubt that causes a juror to hesitate to act—"If that reasonable, sensible person . . . pauses, hesitates, cannot go forward in acting, that is what we call reasonable doubt." (*See* Mar. 28, 2013 Trial Tr. at 10–11.)  *See Brooks*, 2017 WL 3475475, at *4 ("The Supreme Court has made clear, however, that a charge on reasonable doubt should be expressed 'in terms of the kind of doubt that would make a person hesitate to act rather than the kind on which he would be willing to act.'" (quoting *Holland v. United States*, 348 U.S. 121, 140 (1954)).

Hart-Jones argues that Judge DeFino-Nastasi "impermissibly situated reasonable doubt in terms of acting" when she used "life-threatening surgery" as an example of "the kind of decision

that a person is really going to deliberate upon before they make" because unlike "elective" or "cosmetic" surgery from which a reasonable person may refrain, "someone considering life threatening surgery would certainly overcome [any reasonable doubt] and move forward with the procedure." (Doc. No. 27 at 7–8.)  Though the instruction references "life-threatening surgery," it provides no other conditions or circumstances that would automatically lead a juror to make the assumption that Hart-Jones makes—that someone considering such surgery "would certainly overcome [any reasonable doubt] and move forward with the procedure." (*See id.*)  And Hart-Jones fails to consider the instruction in its entirety, which the Court must do.  *See United States v. Isaac*, 134 F.3d 199, 203 (3d Cir. 1998) ("Due process is satisfied if the instructions, taken as a whole, accurately convey the concept of reasonable doubt to the jury.").  It is clear that, when considered as a whole, the instruction solely, explicitly, and repeatedly characterizes reasonable doubt as doubt that causes a person to *refrain* from acting—i.e., to refrain from having life-threatening surgery.

Second, Judge DeFino-Nastasi's instruction—specifically, her use of "life-threatening surgery" as a hypothetical "kind of decision that a person is really going to deliberate upon" but ultimately "pauses, hesitates, [and] cannot go forward in acting" upon based on reasonable doubt—did not include any additional language qualifying this hypothetical decision that suggested a higher degree of doubt is required for acquittal than reasonable doubt.  Hart-Jones contends that this example is equally "emotionally charged" as the hypotheticals that rendered the reasonable doubt instructions in *Vando*, *Moore*, and *Brooks* unconstitutional.  (Doc. No. 27 at 9.)  But Judge DeFino-Nastasi's instruction merely poses "life-threatening surgery" as one of two examples of "really important life decisions" with which a reasonable and sensible person would decide not to move forward based on reasonable doubt.  Crucially, her instruction lacks

the kind of emotionally charged context surrounding the hypothetical surgery that tainted the reasonable doubt instructions in *Vando*, *Moore*, and *Brooks*.

For example, the jury instruction that the *Vando* court found unconstitutional described reasonable doubt as doubt one overcomes to decide to move forward with a surgery for "your precious one [who] had a life-threatening condition and the only appropriate protocol for that life-threatening condition was surgery now." 652 F. Supp. 3d at 514. The court concluded that this hypothetical unconstitutionally heightened the level of doubt for acquittal because "a family member confronted with a choice where surgery was the only reasonable hope—however dim— for a treating a life-threatening condition would likely take action notwithstanding substantial doubts that the procedure will save a patient's life." *See id.* at 515–16 (internal quotations omitted). Similarly, the *Brooks* court determined that a jury instruction explaining reasonable doubt as doubt one overcomes to decide to move forward with an "experimental surgery for "someone in your life who's absolutely precious to you" with "a life-threatening condition and . . . the only known protocol or the best protocol for that condition was an experimental surgery" violates due process as a "powerful and emotionally charged metaphor" that suggests a higher degree of doubt for acquittal than reasonable doubt, since "[o]bjectively speaking, any person of decency and morals would strive to put aside doubt when faced with a single life-saving option for a loved one." 2017 WL 3475475, at *3–4.

"To test the constitutionality of the instruction given here requires consideration of how a reasonable juror would analyze the hypothetical decision presented in the court's charge." *Brooks*, 2017 WL 3475475, at *4. Unlike the previous surgery hypotheticals, Judge DeFino-Nastasi's "life-threatening surgery" example was mitigated by her inclusion of both another example of an important life decision—"whether to pick up your whole family and move across

the country"—and other, more general descriptions of the concept of reasonable doubt in her instruction. *Cf. id.* at *5 ("The hypothetical was not ancillary to the court's charge, but rather was conveyed to the jury as a model for understanding the very concept of reasonable doubt. Moreover, it was not mitigated by any further definition or explanation."). Further, her instruction began and ended with descriptions of reasonable doubt as doubt that would cause a reasonable and sensible person to refrain from acting.

Considering Judge DeFino-Nastasi's reasonable doubt instruction as a whole, the Court agrees with Judge Hey's conclusion that there is no "reasonable likelihood" that the jury applied this instruction in a way that lessened the Commonwealth's burden of proof beyond a reasonable doubt. (*See* Doc. No. 20 at 20–21.) *See Moore*, 2022 WL 1749250, at *8. Because the instruction was not improper, trial counsel's failure to object to the instruction did not amount to deficient performance, and Hart-Jones' IAC claim fails under the first prong of *Strickland*. *See* 466 U.S. at 687–88. The Court thus overrules Hart-Jones' objection to Judge Hey's findings and conclusions as to his IAC claim premised on trial counsel's failure to object to the reasonable doubt instruction.

### B.    Ground 2:  Ineffectiveness of Trial Counsel Based on Failure to Request Favorable Jury Instructions

Hart-Jones also argues that his trial counsel was ineffective for failing to "request favorable applicable instructions regarding the evidence and the supposed defense" and that his PCRA counsel was ineffective for failing to raise this claim, which caused it to be procedurally defaulted. (Doc. No. 1 at 25–29.) Judge Hey broadly construes this claim as an IAC claim premised on trial counsel's failure to request alibi and mere presence jury instructions. (Doc. No. 20 at 22.) Judge Hey recommends dismissal of this claim based on her determination that the underlying IAC claim lacks merit pursuant to 28 U.S.C. § 2254(b)(2). (*Id.* at 22–28.)

Specifically, Judge Hey finds that Hart-Jones' "counsel clearly made a strategic choice not to request an alibi instruction," and "[i]n light of the evidence and arguments made at trial, Hart-Jones has not established that his counsel's strategy was unsound, nor that his decision not to request an alibi instruction fell below the *Strickland* standard." (*Id.* at 26.) Judge Hey also finds that "based on the evidence and based on the prosecution's theory of Hart-Jones' guilt and the court's instructions, it was not possible for the jury to convict without finding that Hart-Jones was himself the shooter. Therefore, counsel was not deficient in failing to request a mere presence instruction." (*Id.* at 28.)

Hart-Jones does not take issue with Judge Hey's conclusion as to the mere presence instruction. Instead, he argues that Judge Hey's "opinion that the misidentification and alibi instructions are inconsistant [sic] with each other is fundamentally flawed" and focuses his objection on trial counsel's ineffectiveness for failing to "adequately develop the alibi defense." (Doc. No. 27 at 11–12.) Hart-Jones claims that trial counsel's decision not to request an alibi instruction could be described as a reasonable strategy only insofar as it "minimize[d] the prejudice of trial counsel's ineffectiveness in failing to timely present the alibi defense." (*Id.* at 12.) Hart-Jones does not raise trial counsel's failure to present an alibi defense as an explicit claim for relief in his habeas petition. Nevertheless, broadly construing Hart-Jones' arguments in support of his IAC claim based on trial counsel's failure to "request favorable applicable instructions regarding the evidence and the supposed defense," the Court treats Hart-Jones' objection as an objection to Judge Hey's findings and conclusions on the alibi instruction aspect of this IAC claim. Specifically, the Court understands Hart-Jones to be arguing that Judge Hey did not consider trial counsel's failure to request an alibi instruction as part of a larger failure to develop and present an alibi defense. As Judge Hey proceeded with respect to her analysis of

Hart-Jones' IAC claim premised on trial counsel's failure to request alibi and mere presence jury instructions, the Court finds that this IAC claim—to the extent it is based on trial counsel's more comprehensive failure to develop and present an alibi defense—is meritless and thus can be denied under 28 U.S.C. § 2254(b)(2) without first considering the procedural issues associated with the claim.

When deciding an IAC claim, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. To that end, counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91.

As the R&R points out, Ms. Mathis' trial testimony that Hart-Jones was with her at the time of the shooting "[c]learly" "supported an alibi defense." (Doc. No. 20 at 24.) Ms. Mathis testified that she never reported to the police that Hart-Jones was with her at the time of the shooting but that she did tell Hart-Jones' counsel this information in September 2011 when Hart-Jones was arrested in connection with the shooting. (Mar. 27, 2013 Trial Tr. at 117–20.) Rather than rely on Ms. Mathis' testimony as the basis for an alibi defense, Hart-Jones' counsel decided to pursue a defense that relied on the testimony of a disinterested witness, Mr. DeLeon, who placed Hart-Jones in the vicinity of the shooting during the relevant timeframe but arguably established that Hart-Jones was not the hooded shooter that both he and Mr. Gonzalez had seen.

Hart-Jones has not provided any evidence or argument that persuades the Court to overcome the presumption that his trial counsel performed reasonably in deciding not to

"adequately develop" an alibi defense.  (*See* Doc. No. 27 at 11–12.)  The Court agrees with

Judge Hey that the defense witnesses, Ms. Mathis and Mr. DeLeon, supported two different

defenses—alibi and misidentification—that were inconsistent with each other, such that it was

reasonable for Hart-Jones' counsel to proceed with only one of those defenses.  *See Lewis v.*

*Horn*, 581 F.3d 92, 108 (3d Cir. 2009) (rejecting argument that trial counsel performed

unreasonably by failing to present a theory of self-defense in addition to, or instead of, the alibi

defense presented at trial in part because "it would have been factually inconsistent to present a

theory of self defense in the alternative").  And the nature of Ms. Mathis' relationship with Hart-

Jones and the fact that she never told the police that Hart-Jones was with her at the time of the

shooting further demonstrate the reasonableness of trial counsel's decision not to rely on Ms.

Mathis' testimony in support of an alibi defense.  In sum, trial counsel's decision to pursue one

defense when faced with factually inconsistent defenses and credibility determinations is

"precisely the sort of decision which *Strickland* precludes us from second guessing."  *Echols v.*

*Ricci*, 492 F. App'x 301, 311 (3d Cir. 2012).

 The Court thus finds that Hart-Jones has failed to establish that his trial counsel's

decision not to pursue an alibi defense was objectively unreasonable, so this IAC claim also fails

under the first prong of *Strickland*.  *See* 466 U.S. at 687–88.  The Court overrules Hart-Jones'

objection to Judge Hey's findings and conclusions as to the alibi instruction aspect of his IAC

claim.

### C. Certificate of Appealability

 Hart-Jones requests that to the extent the Court denies his petition, we also issue a

certificate of appealability as to the Court's denial of his IAC claims based on trial counsel's

failures to object to the reasonable doubt instruction and request "favorable applicable

instructions."  (Doc. No. 27 at 9–10, 12.)  A court may issue a certificate of appealability with

respect to its final order on a habeas petition brought under 28 U.S.C. § 2254 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This "substantial showing" standard requires "a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations omitted).  Where, as here, "a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward:  The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*

Hart-Jones has not made the requisite showing that reasonable jurists would find the Court's assessment of either of these IAC claims debatable or wrong.  *See id.*  As explained above, Hart-Jones has failed to identify any case law that supports his arguments that the reasonable doubt instruction given to the jury during his trial was unconstitutional because it included an "emotionally charged" hypothetical and described reasonable doubt as causing someone to act.  *See Szuchon v. Lehman*, 273 F.3d 299, 319 (3d Cir. 2001) (granting a certificate of appealability on petitioner's habeas claim that he was denied his Fifth Amendment right to be advised before his court-ordered psychiatric examination that his statements during that examination could be used against him because petitioner established that "it is at least debatable whether admission of the [examination] evidence was inconsistent with" the Supreme Court's holding in *Estelle v. Smith*, 451 U.S. 454 (1981)).  And he has failed to provide any evidence or case law that supports his argument that trial counsel's failure to "timely present" an alibi defense was unconstitutional.  (*See* Doc. No. 27 at 12.)  Accordingly, the Court denies Hart-

Jones' request for a certificate of appealability with respect to the Court's denial of these IAC claims raised in his habeas petition.

## IV.    CONCLUSION

For the reasons discussed above, the Court overrules Hart-Jones' objections to Judge Hey's R&R, adopts the R&R in its entirety, and denies Hart-Jones' petition.  The Court declines to issue a certificate of appealability.

An appropriate Order follows.